IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WAYNE BLATT, *on behalf of himself* )
*and all others similarly situated*, )
 )
     **Plaintiff,** )
 )   Case No. 2:15-cv-00015
v. )
 )   Judge Sharp
CAPITAL ONE AUTO FINANCE, INC., )
 )
     **Defendant.** )
 )

## MEMORANDUM

Pending before the Court are cross motions for summary judgment. Defendant Capital One Auto Finance, Inc. ("COAF") filed a Motion for Summary Judgment on Plaintiff Wayne Blatt's ("Blatt") claims under the Electronic Fund Transfer Act. (Docket No. 30). Plaintiff Wayne Blatt ("Blatt") filed a Response in Opposition and Cross-Motion for Partial Summary Judgment. (Docket No. 38). COAF then filed a Reply. (Docket No. 39). For the reasons stated below, the Court will grant COAF's Motion for Summary Judgment and will deny Blatt's Partial for Summary Judgment.

## BACKGROUND

On or about March 18, 2014, Blatt purchased a vehicle from Ford Lincoln of Cookeville. (Docket No. 32 at 1). Blatt financed this vehicle through the execution of a Retail Installment Sale Contract ("RISC"). The RISC was then assigned to COAF. Id. After Blatt failed to make his first payment on time, he called COAF on May 6, 2014. During that May 6, 2014 phone call, Blatt (1) authorized COAF to make a one-time withdrawal from his checking account to cover

1

his missed payment; and (2) requested that he be enrolled in DirectPay—COAF's monthly automatic payment system. Id. To complete Blatt's second request, he was transferred to the Interactive Voice Response (IVR) system, where Blatt input his loan account number as well as the last four digits of his Social Security Number. Id. at 2. After Blatt did this, the following messaged played:

> Please listen to the entire DirectPay Authorization message before giving your enrollment authorization. If you hang up, DirectPay will not be authorized for your account. For your loan number <LoanAcctID>, you authorize Capital One to electronically debit a payment of <Amt> from your <(checking/savings)> account with routing number <AbaNum> and account number <BankAcctID>. Payments will be monthly on the <date> of each month. The first payment will debit on or after <Date>. Your payments will continue until the total amount due is paid or you ask us to stop or change your enrollment. If you wish to change or cancel DirectPay, call us at 800-946-0332. Once you are enrolled in DirectPay, we will no longer send you a monthly statement. If we do not receive the payment for any reason, including insufficient funds, you are responsible for sending a payment and we may charge a returned payment fee. If you are delinquent, or become delinquent, DirectPay may not bring your account current, and collection calls, late fees and credit bureau impact may result.
>
> To authorize the enrollment of your account in DirectPay, press 1. To hear this information again, press 2. If you wish to make changes or speak with a customer service agent, press 0. To cancel, press *.

Id.

After hearing this message, Blatt pressed "1" on his phone. On May 7, 2014, COAF mailed Blatt a letter confirming the one-time debit from his checking account to make his missed payment. On May 8, 2014, COAF mailed Blatt a letter confirming his enrollment in DirectPay. Id. The May 8, 2014 letter contained the following information: the amount of the payments to COAF, the recurring schedule of the payments, the date on which the first withdrawal would take place, the date on which Blatt agreed to the terms via the IVR system, and information on how to cancel or change his DirectPay enrollment. (Docket No. 32, Ex. C).

2

Blatt now claims that COAF violated the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq*, in the course of enrolling Blatt in DirectPay. The EFTA governs proper authorization of electronic fund transfers. 15 U.S.C. § 1693. Blatt claims that COAF violated the EFTA in two specific ways: (1) COAF did not obtain his authorization to the recurring payments in writing, as the EFTA requires; and (2) the May 8, 2014 letter COAF mailed to Blatt was insufficient to meet the EFTA's requirement that COAF mail a copy of the authorization to him. (Docket No. 1 at 7-8).

## **LEGAL STANDARD**

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir.1993). But the non-moving party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). See Celotex, 477 U.S. at 324; Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." Moore v. Philip Morris Co., 8 F.3d 335, 339–40 (6th Cir.1993).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. U.S., 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts . . . [.] Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

Id. (citations omitted).

## **ANALYSIS**

The Court first notes that the parties have stipulated to all the relevant facts. Consequently, the only issues that remain are issues of statutory interpretation, and "statutory interpretation is a question of law[.]" Boegh v. EnergySolutions, Inc., 772 F.3d 1056, 1059 (6th Cir. 2014). "[T]he starting point for interpretation is the language of the statute itself." Id.

Preauthorized electronic fund transfers, such as the ones Blatt agreed to by enrolling in DirectPay, are governed by the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq*. (Docket No. 1 at 7). For purposes of this case, the relevant portion of the EFTA is the following sentence: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C § 1693e(a).

The EFTA is implemented by Regulation E, 12 C.F.R. 1005 *et seq*, which also contains official interpretations. Regulation E, 12 C.F.R. Pt. 1005, Supp. I ¶ 5 (2016). Regulation E allows for the consumer's written authorization to be provided electronically, as long as the electronic authorization complies with the Electronic Signatures in Global and National Commerce Act ("E-SIGN Act"). Id. The E-SIGN Act was enacted in 2000, in recognition of the

developing world of electronics, and it mandates that a signature "may not be denied legal effect . . . solely because it is in electronic form[.]"  15 U.S.C. § 7001(a)(1).  Furthermore, it mandates that a "contract relating to such transaction may not be denied legal effect . . . solely because an electronic signature or electronic record was used in its formation."  15 U.S.C. § 7001(a)(2).  The parties have already stipulated that Blatt's May 6, 2014 phone call was conducted by "electronic means" through an "electronic agent" (the IVR system) and that the call generated an "electronic record" and "electronic signature" as all terms are defined in the E-SIGN Act.  (Docket No. 32 at 2).

Nevertheless, Blatt claims that COAF violated two portions of the EFTA: (1) the requirement that his authorization be in writing; and (2) the requirement that COAF provide him with a copy of the authorization "when made."  (Docket No. 1 at 7-8).

**I.  Blatt's Claim Regarding Written Authorization**

First, Blatt claims that his authorization over the phone does not equate to written authorization as contemplated in the EFTA.  (Docket No. 38 at 4).  Blatt acknowledges that the EFTA and the E-SIGN Act in conjunction allow written signatures to be obtained electronically.  (Docket No. 38 at 5).  Blatt has also stipulated to facts establishing that his May 6, 2014 phone call created an "electronic signature" under the E-SIGN Act.  (Docket No. 32 at 2).  Furthermore, a 2015 Compliance Bulletin issued by the Consumer Financial Protection Bureau ("CFPB"), the government agency in charge of implementing the EFTA, states that the EFTA "does not prohibit companies from obtaining signed, written authorizations from consumers over the phone if the E-Sign Act requirements for electronic records and signatures are met."  Requirements for Consumer Authorizations for Preauthorized Electronic Fund Transfers, CFPB Compliance Bulletin 2015-06, 11232015, 2015 WL 10372389.  Corresponding to this agency interpretation

5

of the EFTA, the legislative history of the E-SIGN Act shows that it was enacted with phone systems in mind: "Today, a system that creates a digital file by means of the use of voice, as opposed to a keyboard, mouse or similar device, is capable of creating an electronic record, despite the fact that it began its existence as an oral communication." Regulation E Electronic Signatures in Global and National Commerce Act-Conference Report-Resumed, 146 Cong. Rec. S. 5281, 5284. Nonetheless, Blatt argues that COAF failed to comply with a different portion of the E-SIGN Act, § 7001(c), concerning consumer disclosures. Blatt believes that because COAF did not comply with the entire E-SIGN Act, then his electronic signature is invalid for purposes of the EFTA. (Docket No. 38 at 4-5).

Under a plain reading of § 7001(c), the E-SIGN Act section in question, COAF is not required to make the consumer disclosures as Blatt argues. Section 7001(c) states that "if a statute . . . requires that information relating to a transaction. . . be provided or made available to a consumer in writing, the use of an electronic record to provide or make available . . . such information satisfies the requirement that such information be in writing" if COAF provides the consumer with certain disclosures. 15 U.S.C. § 7001(c)(1). This section does not apply to Blatt's situation, however, because COAF did not provide any information in electronic form. COAF *obtained* Blatt's signature electronically and then provided a copy of that authorization to Blatt in paper form. If COAF had chosen to provide Blatt with a copy of his authorization in the form of an electronic record, it may have been required to comply with this section's consumer disclosure requirements, but that is not the situation in front of the Court.

Blatt attempts to explain around this reading with a number of conclusory statements. For example, Blatt claims that "§ 7001(c) is the only subsection [of the E-SIGN Act] logically associated with § 1693e(a) of the EFTA, because it deals with the provision of information to

consumers." (Docket No. 38 at 6).  Blatt's assertion that § 7001(c) is the only subsection of the E-SIGN Act to apply to Blatt's EFTA claim is unsurprising, seeing as he has already stipulated to facts definitively establishing that his May 6, 2014 phone call created an "electronic signature" and "electronic record" in compliance with the E-SIGN Act.  (Docket No. 32 at 2).

Because § 7001(c) of the E-SIGN Act does not apply to Blatt's situation, and the parties have stipulated to facts establishing that Blatt's May 6, 2014 phone call created an electronic signature in accordance with the applicable portions of the E-SIGN Act, the Court finds that COAF met the written authorization requirement as contemplated in the EFTA.

## II. Blatt's Claim Regarding the Copy of His Authorization

Blatt's second claim argues that COAF violated the § 1693e(a) requirement that "a copy of such authorization shall be provided to the consumer when made."  (Docket No. 38 at 1). Blatt argues that COAF violated this provision in two ways: (1) COAF did not send the copy of the authorization "when made" but instead waited two business days; and (2) the copy that COAF did eventually send was insufficient, in both form and substance, for purposes of the EFTA.  Id. at 7-9.

### A. "When made"

Blatt argues that "when made" means contemporaneously with the authorization. (Docket No. 38 at 6-7).  To support this claim, Blatt cites two cases.  Neither of them is convincing.  First, Blatt cites a Sixth Circuit case, Wike v. Vertrue, Inc., 566 F.3d 590, 594 (6th Cir. 2009), which states that "if and when the payee secures the consumer's consent in writing it must furnish a copy of that writing to the consumer."  Wike, 566 F.3d at 594.  However, the phrase "if and when" does no more to suggest "contemporaneously" than the EFTA itself does when it uses the words "when made."  Next, Blatt cites the District of Connecticut's statement in

L.S. v. Webloyalty, Inc., 138 F. Supp. 3d 164, 182 (D. Conn. 2015), aff'd in part, vacated in part sub nom. L.S. v. Webloyalty.com, Inc., No. 15-3751, 2016 WL 7402617 (2d Cir. Dec. 20, 2016) that the "discernible individual consumer right protected by § 1693e(a) is a consumer's right to receive a contemporaneous copy of the terms and conditions of a preauthorized electronic fund transfer he has authorized from his account." However, as the citation indicates, this case was later vacated in part by the Second Circuit. Specifically, the Second Circuit vacated the portion on which Blatt relies. L.S. v. Webloyalty.com, Inc., No. 15-3751, 2016 WL 7402617, at *5 (2d Cir. Dec. 20, 2016) ("[W]e vacate as to the grant of the motion to dismiss on appellant's second claim that Webloyalty violated EFTA by failing to provide him with a copy of his funds transfer authorization."). Consequently, any influence this opinion may have had is no longer relevant.

Two business days is an appropriate amount of time to provide a copy of the authorization when looking at both the plain language of the EFTA as well as other notice requirements in the statute. Examples include: (1) for transfers *to* a consumer's account, the financial institution must provide "oral or written notice of the transfer within two business days after the transfer occurs;" 12 C.F.R. § 1005.10; (2) when a consumer notifies a financial institution about an alleged error and the financial institution investigates and determines that no error occurred, the financial institution "shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation;" 15 U.S.C. § 1693f; (3) when a consumer learns of a lost or stolen card, the consumer must inform the financial institution within two business days in order to limit the consumer's financial responsibility for unauthorized charges; 15 U.S.C. § 1693g(a); and (4) the issuer of a prepaid account must provide "the consumer a copy of the consumer's prepaid account agreement no later than five business days after the issuer receives the consumer's request." 12 C.F.R § 1005.19. Furthermore, to

impose a requirement upon companies the size of COAF that all copies of authorizations must be provided at the very moment in which they are made would be unreasonable and unworkable. To be clear, the Court is not establishing a specific deadline by which a company must have the copy of an authorization mailed. The Court is merely saying that two business days is an appropriate amount of time to meet the EFTA notice requirement in § 1693e(a). Giving the words of the EFTA their ordinary and plain meaning while also considering other portions of the statute, the Court finds that contemporaneousness is not required, and two business days after the authorization reasonably meets the requirement of "when made."

### B. Insufficiency of the Copy of the Authorization

Blatt next argues that the paper copy of the authorization that COAF eventually mailed to him did not meet the requirements of the EFTA in two ways. (Docket No. 38 at 8). First, Blatt claims that because COAF obtained Blatt's authorization via the electronic IVR system, COAF was then required to give Blatt an audio recording of the phone call he placed with the IVR system. Id. at 8-9. Blatt claims this is required by § 7001(e) of the E-SIGN Act, which states that "the legal effect . . . of an electronic record . . . may be denied if such electronic record is not in a form that is capable of being retained and accurately reproduced for later reference[.]" 15 U.S.C. § 7001(e); (Docket No. 38 at 8-9).

Second, Blatt claims that the paper copy of his authorization that he was eventually mailed fails to make up for COAF's failure to send him a copy of the phone call because the letter did not contain the full terms to which Blatt agreed when he used the IVR system. More specifically, Blatt cites the following differences between the IVR system and the paper copy he received in the mail: (1) the IVR system informed Blatt that he would no longer be receiving monthly statements while the letter did not mention this fact; and (2) the IVR system told Blatt

that if he "wish[ed] to change or cancel DirectPay, call [COAF] at 800-946-0332" while the letter told Blatt that he "can stop payment of any entry by notifying [COAF] three (3) business days or more before [his] account is charged." (Docket No. 38 at 9).

The Court finds that § 7001(e) of the E-SIGN Act does not apply to Blatt's situation because Blatt is not disputing the contents of the original phone call in which Blatt gave his authorization; Blatt has stipulated to exactly what the IVR message said, that he agreed to the terms in the message, and that he pressed "1" to confirm his enrollment in the DirectPay program. To any extent that it does, the stipulated facts contain an accurate reproduction of the IVR transaction to which all parties have agreed. Furthermore, the EFTA's official interpretations allow financial institutions to comply with the copy requirement by providing the copy of the authorization "either electronically or in paper form" and do not require that it be provided in the same form in which the authorization was obtained. 12 C.F.R. § Pt. 1005, Supp. I. 10(b) ¶ 5. Therefore, COAF's letter mailed to Blatt was a correct form in which to give a copy of the electronic authorization.

Finally, the Court finds that the terms contained in the letter mailed to Blatt are sufficient to meet the standards of 15 U.S.C. § 1639e(a), and the letter's failure to recite the exact words used in the IVR system is immaterial. The CFPB Compliance Bulletin published in November 2015 states that "[t]wo of the most significant terms of an authorization are the timing and amount of the recurring transfers from the consumer's account." CFPB Compliance Bulletin 2015-06, 2015 WL 10372389. The CFPB notes that it previously found companies in violation of this requirement when the companies mailed copies of authorizations that failed to "disclose important authorization terms such as the recurring nature of the preauthorized EFTs, or the amount and timing of all the payments to which the consumer agreed." Id. The copy of the

authorization that COAF mailed to Blatt contained the amount of the payments to COAF, the recurring schedule of the payments, the date on which the first withdrawal would take place, the date on which Blatt agreed to the terms via the IVR system, and information on how to cancel or change his DirectPay enrollment. (Docket No. 32, Ex. C). Blatt fails to cite any case law, statute, or regulation requiring the terms in the copy of the authorization be an exact replica of the IVR system's message, and the Court is unwilling to impose such an obligation. Here, the letter mailed to Blatt contained the material and important terms of his DirectPay enrollment. This letter is sufficient to meet COAF's duty under 15 U.S.C. § 1693e(a) that COAF mail Blatt a copy of his authorization.

## CONCLUSION

As stated at the outset, there are no material factual issues remaining in this case. Construing the EFTA as well as the E-SIGN Act in reasonable and ordinary terms, the Court finds that COAF has not violated 15 U.S.C. § 1693e(a) in relation to Blatt. For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. A separate order shall be entered.

*[signature: Kevin H. Sharp]*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE